**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THEODORE LACHMAN, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> REVLON, INC., PAUL MEISTER, DEBRA PERELMAN, VICTORIA DOLAN, WENDEL F. KRALOVICH, LORENZO DELPANI, ROBERTO SIMON, SIOBHAN ANDERSON, FABIAN T. GARCIA, and JUAN R. FIGUEREO, <br><br> Defendants. | Case No: <br><br> CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> JURY TRIAL DEMANDED |

Plaintiff Theodore Lachman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Revlon, Inc. ("Revlon" or the "Company"), and information

1

readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Revlon securities from March 12, 2015 through March 28, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district, and the Company conducts substantial business in this district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Revlon securities during the Class Period and was economically damaged thereby.

7.      Defendant Revlon purports to manufacture, market, distribute, and sell beauty and personal care products worldwide. Revlon is incorporated in Delaware and with headquarters in New York City. The Company's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "REV."

8.      Defendant Paul Meister ("Meister") served as Executive Vice Chairman from January 2018 until November 2018, a Director since 2016, and the Company's interim Principal Executive Officer from January 2018 until May 22, 2018.

9.      Defendant Debra Perelman ("Perelman") has served as the Company's President and Chief Executive Officer ("CEO") since May 22, 2018. She served as the Company's Chief Operating Officer ("COO") from January 2018 until November 2018, and as a Director of Revlon since June 2015.

10.      Defendant Victoria Dolan ("Dolan") has served as the Company's Chief Financial Officer ("CFO") since March 12, 2018.

11.      Defendant Wendel F. Kralovich ("Kralovich") served as the Company's Senior Vice President, Chief Accounting Officer & Controller from October 2017 to December 2018.

12.      Defendant Lorenzo Delpani ("Delpani") served as the Company's President and CEO from the beginning of the Class Period until March 1, 2016.

13.      Defendant Roberto Simon ("Simon") served as the Company's Executive Vice President and CFO from the beginning of the Class Period until February 2016.

14.    Defendant Siobhan Anderson ("Anderson") served as the Company's Vice President, Chief Accounting Officer, Corporate Controller, and Treasure from October 2014 until August 31, 2017.

15.    Defendant Fabian T. Garcia ("Garcia") served as the Company's President and CEO from April 15, 2016 until January 28, 2018.

16.    Defendant Juan R. Figuereo ("Figuereo") served as the Company's CFO from April 2016 until June 6, 2017.

17.    Defendants Meister, Perelman, Dolan, Kralovich, Delpani, Simon, Anderson, Garcia, and Figuereo are collectively referred to herein as the "Individual Defendants."

18.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

19.    Revlon is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

20.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Revlon under *respondeat superior* and agency principles.

21.    Defendants Revlon and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements

22.    On March 12, 2015, Revlon filed its annual report on Form 10-K for the year ended December 31, 2014 with the SEC (the "2014 10-K"). The 2014 10-K was signed by Defendants Delpani, Simon, and Anderson. The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Delpani and Simon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

23.    The 2014 10-K stated the following risk regarding Revlon's enterprise resource planning ("ERP") system in relevant part:

> ***The failure of the Company's information technology systems and/or difficulties or delays in implementing new information technology systems could disrupt the Company's business operations which could have a material adverse effect on the Company's business, financial condition and/or results of operations.***

*    *    *

The Company is currently implementing a company-wide SAP enterprise resource planning ("ERP") system. The Company's anticipated implementation of this SAP

ERP system may not result in improvements that outweigh its costs and may disrupt the Company's operations. This system implementation subjects the Company to substantial costs, the majority of which are capital expenditures, and inherent risks associated with migrating from the Company's legacy systems. These costs and risks could include, but are not limited to:

- inability to fill customer orders accurately or on a timely basis, or at all;
- inability to process payments to vendors accurately or in a timely manner;
- disruption of the Company's internal control structure;
- inability to fulfill the Company's SEC or other governmental reporting requirements in a timely or accurate manner;
- inability to fulfill federal, state and local tax filing requirements in a timely or accurate manner;
- increased demands on management and staff time to the detriment of other corporate initiatives; and
- significant capital and operating expenditures.

If the Company is unable to successfully plan, design or implement this new SAP ERP system, in whole or in part, or experience unanticipated difficulties or delays in doing so, it could have a material adverse effect on the Company's business, financial condition and/or results of operations.

24.     As to Revlon's internal controls, the 2014 10-K stated "Revlon, Inc.'s management determined that the Company's internal control over financial reporting was effective as of December 31, 2014."

25.     On February 26, 2016, Revlon filed its annual report on Form 10-K for the year ended December 31, 2015 with the SEC (the "2015 10-K"). The 2015 10-K was signed by Defendants Delpani, Simon, and Anderson. The 2015 10-K contained signed SOX certifications by Defendants Delpani and Simon attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

26.     The 2015 10-K stated the following risk regarding Revlon's ERP system in relevant part:

**The failure of the Company's information technology systems and/or difficulties or delays in implementing new information technology systems could disrupt the Company's business operations which could have a material adverse effect on**

*the Company's business, financial condition and/or results of operations.*

\*          \*          \*

The Company is in the process of implementing a company-wide SAP enterprise resource planning ("ERP") system. The Company's anticipated company-wide implementation of this SAP ERP system may not result in improvements that outweigh its costs and may disrupt the Company's operations. This system implementation subjects the Company to substantial costs, the majority of which are capital expenditures, and inherent risks associated with migrating from the Company's legacy systems. These costs and risks could include, but are not limited to:

•inability to fill customer orders accurately or on a timely basis, or at all;
•inability to process payments to vendors accurately or in a timely manner;
•disruption of the Company's internal control structure;
•inability to fulfill the Company's SEC or other governmental reporting requirements in a timely or accurate manner;
•inability to fulfill federal, state and local tax filing requirements in a timely or accurate manner;
•increased demands on management and staff time to the detriment of other corporate initiatives; and
•significant capital and operating expenditures.

If the Company is unable to successfully plan, design or implement this new SAP ERP system, in whole or in part, or experience unanticipated difficulties or delays in doing so, it could have a material adverse effect on the Company's business, financial condition and/or results of operations.

27.     As to Revlon's internal controls, the 2015 10-K stated "Revlon, Inc.'s management determined that the Company's internal control over financial reporting was effective as of December 31, 2015."

28.     On March 3, 2017, Revlon filed its annual report on Form 10-K for the year ended December 31, 2016 with the SEC (the "2016 10-K"). The 2016 10-K was signed by Defendants Garcia, Figuereo, and Anderson. The 2016 10-K contained signed SOX certifications by Defendants Garcia and Figuereo attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

29.     The 2016 10-K stated the following risk regarding Revlon's ERP system in relevant part:

> ***The failure of the Company's information technology systems and/or difficulties or delays in implementing new information technology systems could disrupt the Company's business operations which could have a material adverse effect on the Company's business, prospects, results of operations, financial condition and/or cash flows.***
>
> \*       \*       \*
>
> The Company is currently implementing a company-wide SAP enterprise resource planning ("ERP") system. The Company's anticipated implementation of this SAP ERP system may not result in improvements that outweigh its costs and may disrupt the Company's operations. This system implementation subjects the Company to substantial costs, the majority of which are capital expenditures, and inherent risks associated with migrating from the Company's legacy systems. These costs and risks could include, but are not limited to:
> - inability to fill customer orders accurately or on a timely basis, or at all;
> - inability to process payments to vendors accurately or in a timely manner;
> - disruption of the Company's internal control structure;
> - inability to fulfill the Company's SEC or other governmental reporting requirements in a timely or accurate manner;
> - inability to fulfill federal, state and local tax filing requirements in a timely or accurate manner;
> - increased demands on management and staff time to the detriment of other corporate initiatives; and
> - significant capital and operating expenditures.
>
> If the Company is unable to successfully plan, design or implement this new SAP ERP system, in whole or in part, or experience unanticipated difficulties or delays in doing so, it could have a material adverse effect on the Company's business, prospects, results of operations, financial condition and/or cash flows.

30.     As to Revlon's internal controls, the 2016 10-K stated "Revlon's management determined that the Company's internal control over financial reporting was effective as of December 31, 2016."

31.     On March 15, 2018, Revlon filed its annual report on Form 10-K for the year ended December 31, 2017 with the SEC (the "2017 10-K"). The 2017 10-K was signed by Defendants

Meister, Peterson, and Kralovich. The 2017 10-K contained signed SOX certifications by

Defendants Meister and Peterson attesting to the accuracy of financial reporting, the disclosure of

any material changes to the Company's internal controls over financial reporting, and the

disclosure of all fraud.

32.     The 2017 10-K stated the following risk regarding Revlon's ERP system in relevant

part:

> ***Difficulties in implementing the Company's new ERP system have disrupted the
> Company's business operations and ongoing disruptions with such
> implementation could have a material adverse effect on the Company's business,
> prospects, results of operations, financial condition and/or cash flows.***
>
> The Company is implementing a new company-wide SAP enterprise resource
> planning ("ERP") system, which subjects the Company to inherent risks associated
> with migrating from the Company's legacy systems to a new IT platform,
> including, without limitation:
>> •the inability to fill customer orders accurately or on a timely basis, or at
>> all;
>> •increased demands on management and staff time to the detriment of other
>> corporate initiatives;
>> •significant capital and operating expenditures;
>> •the inability to process payments to vendors accurately or in a timely
>> manner;
>> •disruption of the Company's internal control structure; and/or
>> •the inability to fulfill federal, state and local reporting and filing
>> requirements in a timely or accurate manner.
>
> During February 2018, the Company launched the new ERP system in the U.S.,
> which caused its Oxford, N.C. manufacturing facility to experience service level
> disruptions that have impacted the Company's ability to manufacture certain
> quantities of finished goods and fulfill shipments to several large retail customers
> in the U.S. The Company cannot provide assurances that it will remedy the ERP
> systems issues in time to fully recover these sales and/or that the ERP
> implementation will not continue to disrupt the Company's operations and its
> ability to fulfill customer orders. Also, these ERP-related disruptions have caused
> the Company to incur expedited shipping fees and other unanticipated expenses in
> connection with actions that the Company has implemented to remediate the
> decline in customer service levels, which could continue until the ERP systems
> issues are resolved. To the extent that these disruptions occur in larger magnitudes
> or continue to persist over time, it could negatively impact the Company's
> competitive position and its relationships with its customers and thus could have a

material adverse effect on the Company's business, prospects, results of operations, financial condition and/or cash flows.

33.    As to Revlon's internal controls, the 2017 10-K stated "Revlon's management determined that the Company's internal control over financial reporting was effective as of December 31, 2017."

34.    On May 10, 2018, the Company filed its quarterly report with the SEC for the quarter ended March 31, 2018 (the "1Q 2018 10-Q"). The 1Q 2018 10-Q was signed by Defendants Meister, Dolan, and Kralovich. The 1Q 2018 10-Q contained signed SOX certifications by Defendants Meister and Dolan attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

35.    In the 1Q 2018 10-Q, Defendants stated the following concerning the Company's internal controls relating to its new, ERP system:

> **(b) <u>Changes in Internal Control Over Financial Reporting ("ICFR")</u>**. During February 2018, the Company implemented its new ERP system that supports a significant portion of the Company's business in North America, which resulted in certain changes to the Company's processes and procedures. While this new ERP implementation has resulted in service level disruptions in the Company's Oxford, N.C. manufacturing facility, the ERP implementation has not materially affected, nor is it reasonably likely to materially affect, the Company's ICFR.

36.    On August 9, 2018, the Company filed its quarterly report with the SEC for the quarter ended June 30, 2018 (the "2Q 2018 10-Q"). The 2Q 2018 10-Q was signed by Defendants Perelman, Dolan, and Kralovich. The 2Q 2018 10-Q contained signed SOX certifications by Defendants Perelman and Dolan attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

37.    In the 2Q 2018 10-Q, Defendants stated the following concerning the Company's

internal controls relating to its new, ERP system:

> **(b) <u>Changes in Internal Control Over Financial Reporting ("ICFR")</u>**. There have not been any changes in the Company's internal control over financial reporting during the quarter ended June 30, 2018 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting. During February 2018, the Company implemented its new ERP system that supports a significant portion of the Company's business in North America, which resulted in certain changes to the Company's processes and procedures. While this new ERP implementation has resulted in service level disruptions in the Company's Oxford, N.C. manufacturing facility, the ERP implementation has not materially affected, nor is it reasonably likely to materially affect, the Company's ICFR.

38.     On November 9, 2018, the Company filed its quarterly report with the SEC for the quarter ended September 30, 2018 (the "3Q 2018 10-Q"). The 3Q 2018 10-Q was signed by Defendants Perelman, Dolan, and Kralovich. The 3Q 2018 10-Q contained signed SOX certifications by Defendants Perelman and Dolan attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

39.     In the 3Q 2018 10-Q, Defendants stated the following concerning the Company's internal controls relating to its new, ERP system:

> **(b) <u>Changes in Internal Control Over Financial Reporting ("ICFR")</u>**. There have not been any changes in the Company's internal control over financial reporting during the quarter ended September 30, 2018 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting. During February 2018, the Company implemented its new ERP system that supports a significant portion of the Company's business in North America, which resulted in certain changes to the Company's processes and procedures. While this new ERP implementation has resulted in service level disruptions in the Company's Oxford, N.C. manufacturing facility, the ERP implementation has not materially affected, nor is it reasonably likely to materially affect, the Company's ICFR.

40.     The statements contained in ¶¶22-39 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the

Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Revlon failed to create measures to monitor the ERP system appropriately once implemented; (2) Revlon failed to design, implement and consistently operate effective process-level controls to ensure that it appropriately (a) recorded and accounted for inventory, accounts receivable, net sales and cost of goods sold, (b) reconciled balance sheet accounts, (c) reviewed and approved the complete population of manual journal entries, and (d) used complete and accurate information in performing manual control, which constituted a material weakness in its internal controls over financial reporting; (3) as a result of the poor preparation and planning of the implementation of the ERP system, Revlon was unable to fulfill product shipments of approximately $64 million of net sales and the Company incurred $53.6 million of incremental charges to remediate the decline in customer services levels; and (4) as a result, Defendants' statements about Revlon's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis at all relevant times.

**THE TRUTH BEGINS TO EMERGE**

41.    On March 18, 2019, after market hours, Revlon filed a Form 12b-25, disclosing it was unable to timely file its annual report for the fiscal year ended December 31, 2018 due to the identification of a material weakness in its internal controls relating to its ERP system. The SEC filing states, in relevant part:

> Revlon, Inc. (the "Company") is unable to file, without unreasonable effort and expense, its Annual Report on Form 10-K for the fiscal year ended December 31, 2018 (the "2018 Form 10-K") by the prescribed filing date.
>
> ***The principal reason for the delay is the recent identification of a material weakness, which has created the need for additional time to finalize management's assessment and the audits of the effectiveness of internal control over financial reporting as of December 31, 2018. The Company expects to***

*disclose in its 2018 Form 10-K that it identified a material weakness in its internal control over financial reporting as of year-end 2018, primarily related to the lack of design and maintenance of effective controls in connection with the previously-disclosed implementation of its enterprise resource planning ("ERP") system in the U.S.*

The Company does not expect any changes to its previously-reported preliminary financial results, including the financial results that it previously reported in its press release furnished as Exhibit 99.1 to the Company's Current Report on Form 8-K filed with the SEC on March 18, 2019. Upon completion of the audits, the Company expects to file its 2018 Form 10-K within the extension period of 15 calendar days as provided under Rule 12b-25 under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

The Company is working diligently along with its external auditor to complete its work and audit and expects to file the 2018 Form 10-K within the grace period prescribed by Rule 12b-25 under the Exchange Act.

(Emphasis added).

42.    On this news, shares of Revlon fell $1.33 per share, or nearly 6.87%, to close at $18.02 per share on March 19, 2019, damaging investors.

43.    On March 28, 2019, after the market closed, Revlon filed its annual report on Form 10-K for the year ending December 31, 2018 with the SEC (the "2018 10-K"). The 2018 10-K revealed further details about Revlon's the problems with the ERP system, internal control weaknesses, and the reasons for these weaknesses, stating in relevant part:

During February 2018, the Company launched the new ERP system in the U.S., which caused its Oxford, N.C. manufacturing facility to experience service level disruptions that impacted the Company's ability to manufacture certain quantities of finished goods and fulfill shipments to several large retail customers in the U.S. *Also, these ERP-related disruptions caused the Company to incur expedited shipping fees and other unanticipated expenses in connection with actions that the Company implemented to remediate the decline in customer service levels. The Company estimates that this ERP launch resulted in the Company being unable to fulfill product shipments representing approximately $64 million of net sales during 2018 and incurring $53.6 million of incremental charges in 2018, mainly related to actions that the Company implemented to remediate the decline in customer service levels.* As of December 31, 2018, the Company's Oxford, N.C. manufacturing facility was operating at pre-SAP levels and the Company was continuing to re-fill inventories across its retail partners, particularly

internationally. If these disruptions occur in larger magnitudes or continue to persist over time, it would continue to negatively impact the Company's ability to fulfill product shipments to customers and cause the Company to incur additional remediation costs, which in turn would continue to negatively impact the Company's competitive position and its relationships with its customers.

\*       \*       \*

The Company's management, under the oversight of the Chief Executive Officer and Chief Financial Officer, assessed the effectiveness of the Company's internal control over financial reporting as of December 31, 2018 and in making this assessment used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission *Internal Control-Integrated Framework* (2013). In connection with this assessment, ***the Company's management identified the following deficiencies in its internal control over financial reporting:***

(i)       ***the Company did not perform an effective continuous risk assessment process that adequately identified and assessed risks affecting the Company's internal controls over financial reporting associated with the implementation of its new ERP system in the U.S.;***

(ii)       ***the Company did not maintain a sufficient number of knowledgeable, trained personnel in the U.S. operations impacted by the ERP system implementation and in various other operations across the Company who understood and were held accountable for their assigned responsibilities for the design, implementation and operation of internal controls over financial reporting***; and

(iii)       as a result, ***the Company did not design, implement and consistently operate effective process-level controls*** to ensure that it appropriately (a) recorded and accounted for inventory, accounts receivable, net sales and cost of goods sold, (b) reconciled balance sheet accounts, (c) reviewed and approved the complete population of manual journal entries and (d) used complete and accurate information in performing manual controls.

While these control deficiencies did not result in any material misstatement of the Company's 2018 Consolidated Financial Statements, ***the Company's management concluded that these deficiencies represented a material weakness, and that the Company's internal control over financial reporting was not effective as of December 31, 2018.***

The Company's independent registered public accounting firm, KPMG LLP, who audited the 2018 Consolidated Financial Statements included in this 2018 Form 10-K issued an adverse report on the Company's internal control over financial

reporting reflecting this material weakness as of December 31, 2018, which report appears on page F-3 of the 2018 Consolidated Financial Statements.

*    *    *

**(d) Management's Remediation Plan**. To remediate this material weakness, the Company will: (i) implement enhancements to company-wide risk assessment processes; (ii) enhance the Company's review and sign-off procedures for IT implementations; (iii) train responsible staff and supplement staff; (iv) supplement internal resources with third-party consultants; (v) enhance its process and control documentation; (vi) implement new processes and controls relative to the execution and oversight of inventory, accounts receivable, net sales and cost of goods sold; (vii) enhance and reinforce policies around account reconciliations and manual journal entries; (viii) clearly identify and communicate individual employee responsibilities; and (ix) implement controls and new reporting tools to ensure the completeness and accuracy of information used in performing manual controls. The Company is also continuing to evaluate additional controls and procedures that may be required to remediate the material weakness.

(Emphasis added).

44.     On this news, shares of Revlon fell $1.33 per share or over 6.4% to close at $19.38 per share on March 29, 2019, further damaging investors.

45.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Revlon securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Revlon, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

47.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Revlon securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

48.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

49.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business Revlon;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Revlon to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of Revlon' securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

52. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Revlon shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

- As a public issuer, Revlon filed periodic public reports with the SEC6;

- Revlon regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Revlon was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

53.     Based on the foregoing, the market for Revlon securities promptly digested current information regarding Revlon from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## <u>COUNT I</u>
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder <u>Against All Defendants</u>

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

58.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Revlon securities during the Class Period.

59.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Revlon were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Revlon, their control over, and/or receipt and/or modification of Revlon's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Revlon, participated in the fraudulent scheme alleged herein.

60.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Revlon personnel to members of the investing public, including Plaintiff and the Class.

61.    As a result of the foregoing, the market price of Revlon securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff

and the other members of the Class relied on the statements described above and/or the integrity of the market price of Revlon securities during the Class Period in purchasing Revlon securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

62.    Had Plaintiff and the other members of the Class been aware that the market price of Revlon securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Revlon securities at the artificially inflated prices that they did, or at all.

63.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

64.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Revlon securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

65.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66.    During the Class Period, the Individual Defendants participated in the operation and management of Revlon, and conducted and participated, directly and indirectly, in the conduct of Revlon's business affairs. Because of their senior positions, they knew the adverse non-public information about Revlon's misstatement of revenue and profit and false financial statements.

67.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Revlon's

financial condition and results of operations, and to correct promptly any public statements issued by Revlon which had become materially false or misleading.

68.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Revlon disseminated in the marketplace during the Class Period concerning Revlon's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Revlon to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Revlon within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Revlon securities.

69.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Revlon.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: May 14, 2019                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
         lrosen@rosenlegal.com

*Counsel for Plaintiff*