**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THEODORE LACHMAN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>REVLON, INC., PAUL MEISTER, DEBRA PERELMAN, VICTORIA DOLAN, WENDEL F. KRALOVICH, SIOBHAN ANDERSON, FABIAN T. GARCIA, JUAN R. FIGUEREO AND CHRISTOPHER H. PETERSON,<br><br>*Defendants.* | No. 19-cv-02859 (RPK) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Sharon L. Nelles
Nicolas Bourtin
Matthew A. Schwartz
Akash M. Toprani
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for defendants Revlon, Inc., Paul Meister, Debra Perelman, Victoria Dolan, Wendel F. Kralovich, Siobhan Anderson, Juan R. Figuereo, and Christopher H. Peterson*

February 24, 2020

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ........................................................................................... 1

**ARGUMENT** .......................................................................................................................... 1

I.  **PLAINTIFFS' OPPOSITION CONFIRMS THAT DEFENDANTS DID NOT MAKE ANY FALSE OR MISLEADING STATEMENTS** ............................... 1

    A.  Revlon's Pre-Launch Disclosures Fully Apprised the Market of the SAP Implementation's Risks ......................................................................................... 1

    B.  Plaintiffs' Opposition Shows that Revlon's Post-Launch Statements Were Also Accurate.......................................................................................................... 3

    C.  Plaintiffs Still Fail to Allege Facts Showing that Revlon's ICFR Certifications Were False........................................................................................ 7

II. **PLAINTIFFS' OPPOSITION CONFIRMS THAT THEY HAVE NOT PLEADED THE REQUIRED "STRONG INFERENCE" OF SCIENTER** ............... 8

**CONCLUSION** ...................................................................................................................... 11

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*In re Aceto Corp. Sec. Litig.*,
2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019)........................................................................6

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019).......................................................................9

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)..................................................................................9

*Chill* v. *Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996).................................................................................................8

*Cornwell* v. *Credit Suisse Grp.*,
666 F. Supp. 2d 381 (S.D.N.Y. 2009)..................................................................................8

*Cornwell* v. *Credit Suisse Grp.*,
689 F. Supp. 2d 629 (S.D.N.Y. 2010)..................................................................................8

*Davidoff* v. *Farina*,
2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005)....................................................................10

*Kalnit* v. *Eichler*,
264 F.3d 131 (2d Cir. 2001).................................................................................................8

*Lefkowitz* v. *Synacor, Inc.*,
2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019)......................................................................7

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
26 F. Supp. 3d 278 (S.D.N.Y. 2014)................................................................................7, 9

*Miyahira* v. *Vitacost.com, Inc.*,
2012 WL 12895513 (S.D. Fla. June 28, 2012) ...................................................................2

*In re Nokia Oyj (Nokia Corp) Sec. Litig.*,
423 F. Supp. 2d 364 (S.D.N.Y. 2006)................................................................................10

*Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)..............................................................................................................5

*In re PetroChina Co. Ltd. Sec. Litig.*,
120 F. Supp. 3d 340 (S.D.N.Y. 2015)................................................................................10

*In re Rockwell Med., Inc. Sec. Litig.*,
   2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) .........................................................................5

*Sgalambo* v. *McKenzie*,
   739 F. Supp. 2d 453 (S.D.N.Y. 2010).....................................................................................2

*Slayton* v. *Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010).................................................................................................2, 6

*In re SunEdison, Inc. Sec. Litig.*,
   300 F. Supp. 3d 444 (S.D.N.Y. 2018).....................................................................................9

## PRELIMINARY STATEMENT

Plaintiffs' Opposition ("Opp.") lays bare their theory of fraud as follows: Defendants, (i) without any personal motives, (ii) inexplicably launched Revlon's SAP rollout *knowing* it would fail, (iii) repeatedly warned the market about significant problems with the SAP rollout and implementation process (including detailed disclosures of Revlon's resulting financial losses), *but* (iv) tried to fraudulently hide these problems by using insufficiently fatalistic language in their warnings.  This theory of fraud is illogical on its face and should be dismissed.

## ARGUMENT

### I.    PLAINTIFFS' OPPOSITION CONFIRMS THAT DEFENDANTS DID NOT MAKE ANY FALSE OR MISLEADING STATEMENTS.

Plaintiffs' Opposition cannot overcome the fact that not only are the alleged misstatements true, but they were also accompanied by a stream of disclosures apprising investors of the risks of the SAP implementation, the impact of the rollout, and the uncertainties of remediation.  Accordingly, Plaintiffs fail to plead the required element of material misstatement.

#### A.    Revlon's Pre-Launch Disclosures Fully Apprised the Market of the SAP Implementation's Risks.

Plaintiffs appear to attack Defendants' pre-SAP launch statements—made on March 3, 2017, April 21, 2017, and November 3, 2017—on the ground that these statements failed to apprise the market sufficiently of the risks involved in the SAP launch, which ultimately occurred on February 1, 2018.[1]  All of Plaintiffs' attacks fail.

---

[1] Specifically, the challenged statements are: (i) Revlon's 2016 10-K, filed on March 3, 2017, which identified the "inherent risks associated with migrating from the Company's legacy systems" that "could have a material adverse effect on the Company's business";  (ii) Revlon's April 21, 2017 proxy statement that the Company was "moving to a single ERP system"; and (iii) a statement by Mr. Peterson in a November 3, 2017 earnings call that "new ERP systems" were among the various initiatives intended to improve the Company.  (Opp. at 12-13.)

*First*, Plaintiffs concede that Revlon's March 3, 2017 annual report warned the market about the numerous "inherent risks associated with migrating from the Company's legacy systems," including the "inability to fill customer orders" or "process payments," and a "disruption of the Company's internal control structure." (Ex. 3 (2016 10-K) at 23; Opp. at 12, 16-17.)[2] Plaintiffs nevertheless argue that these warnings were misleading because they "failed to warn about certain risks known to Defendants." (Opp. at 12.) Given that Revlon's disclosures warned of the very risks that materialized following the SAP launch, it is difficult to imagine what other "certain risks" Plaintiffs are talking about. Plaintiffs also claim these warnings "provided insufficient warnings about risks that had already materialized" (Opp. at 12-13), but fail to explain what risks could have "already materialized" months *before* the February 2018 SAP launch.[3]

*Second*, Plaintiffs contend that Defendants' risk disclosures were "classic boilerplate disclosures that provide no company-specific information." (Opp. at 16-17.) But unlike the cases Plaintiffs cite, Revlon's disclosures were specific to the Company, the SAP process, and Revlon's business, and not simply generic to the entire economy or marketplace.[4] As explained in Defendants' opening brief ("Br."), Revlon's risk disclosures were even more robust than the ERP-related disclosure upheld in *Miyahira* v. *Vitacost.com, Inc.*, 2012 WL 12895513, at *7 (S.D. Fla. June 28, 2012), a case Plaintiffs chose not to address. (*See* Br. at 14.)

---

[2] Citations to "Ex." are to exhibits to the Declaration of Akash M. Toprani. (ECF No. 33.)

[3] Plaintiffs also argue that Revlon should have disclosed by November 2017 that it lacked adequate trained personnel or risk procedures for a successful SAP rollout. (*See* Opp. at 13-15.) But Revlon had already disclosed the actual risks of the implementation, and did not need to disclose the details underlying those risks. In any event, Plaintiffs have not alleged that such purported deficiencies were known at the time of the alleged misstatements, which were months before the February 2018 launch. *See infra* at 9-10.

[4] *See Slayton* v. *Am. Express Co.*, 604 F.3d 758, 772 (2d Cir. 2010) (warning of "potential deterioration in the high-yield sector"); *Sgalambo* v. *McKenzie*, 739 F. Supp. 2d 453, 478 (S.D.N.Y. 2010) (warning of "general factors—such as natural gas prices or environmental hazards").

*Third*, as a last-ditch effort, Plaintiffs claim Defendants' risk disclosures were boilerplate because they are similar to disclosures by other companies, albeit identifying only *one* such company. (Opp. at 16-17.) It is not surprising that another company with manufacturing operations would disclose similar risks when updating its systems—that does not make Revlon's disclosure "boilerplate." Plaintiffs also wrongly argue that Revlon's risk disclosure were boilerplate because they did not change between Revlon's 2016 and 2017 annual reports. (Opp. at 17.) But the warning language *did* change: the 2017 annual report postdated the SAP launch and disclosed that the launch "caused . . . service level disruptions that have impacted the Company's ability to manufacture certain quantities of finished goods and fulfill shipments to several large retail customers in the U.S." (Ex. 4 (2017 10-K) at 22.) And most of the risks facing the Company from the SAP implementation pre-launch still existed post-launch, so it was entirely appropriate to maintain those warnings to the market.

B.   **Plaintiffs' Opposition Shows that Revlon's Post-Launch Statements Were Also Accurate.**

***Statements on Continued Risks of the SAP Implementation.*** Plaintiffs target Revlon's first post-launch disclosure, its warning in its 2017 10-K, filed on March 15, 2018, that "ongoing disruptions with [the SAP] implementation could have a material adverse effect on the Company's business." (Opp. at 18.) Plaintiffs argue that this warning was misleading because "the disruptions were already ongoing" (*id.*), but that is literally what Revlon disclosed, so Plaintiffs' point make no sense. Plaintiffs also contend that it was misleading not to disclose that the rollout was "already . . . having a material adverse effect" on the Company (*id.*), but do not plead that such a material adverse effect had occurred.[5] Indeed, on the same day as the 2017 10-

---

[5] To support this proposition, Plaintiffs cite to paragraph 92 of their complaint, which does nothing more than quote language from Revlon's 2017 10-K, and pleads nothing about a "material adverse effect."

3

K, Mr. Peterson explained that it was "too soon to tell" what the "top line or bottom line impact" of the disruptions were (Ex. 10 (Mar. 15, 2018 Earnings Call) at 5-6), and Plaintiffs plead nothing to show that the impact was known at that time. And Plaintiffs' narrative of concealment is further undermined by Revlon's disclosure at the very next reporting period, on May 10, 2018, that Revlon's financial performance was "heavily impacted" by the SAP rollout, resulting in $20 million of lost sales and $10 million of remediation costs. (*See* Br. at 7, 15.)

***Statements on Impact of Implementation and Remediation.*** Plaintiffs next wrongly contend that Revlon's various post-launch statements in earnings calls on March 15, May 10, August 9, and November 9, 2018 "misled investors about the success and immediacy of the Company's remediation efforts." (Opp. at 18-19.)[6]

*First*, as to immediacy, Plaintiffs' own confidential witness describes that *on the day of the launch*, Revlon's management instituted an "all-hands-on-deck" push to resolve the implementation issues (AC ¶ 62), which confirms Revlon's public statements that it took "immediate actions to address the situation" (Opp. at 18).

*Second*, as to the success of Revlon's remediation efforts, Plaintiffs allege nothing to contradict Revlon's statements that its overall efforts were "on schedule," and even concede that Revlon's "disclosures about the Oxford plant's production levels were literally true." (Opp. at 20.) Plaintiffs argue, however, that having spoken about these issues, Revlon was obligated to disclose that it had "failed to adequately train its employees to properly utilize the SAP software" and "failed to implement adequate risk controls to mitigate the risk of an unsuccessful launch."

---

[6] Plaintiffs object to statements that (i) "the overall implementation steps are on schedule," (ii) Revlon had "taken immediate actions to address the situation [and had] implemented a robust service recovery plan and have communicated with our key customers," (iii) Revlon "expect[ed] the new ERP system to provide significant new capabilities and benefits for the company," and (iv) Revlon had "returned [its] manufacturing capacity to normal levels by early April" and was "currently operating at capacity." (Opp. at 18-19.)

4

(Opp. at 20.)   But a statement is misleading only if "material facts . . . conflict with what a reasonable investor would take from the statement itself." *Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015).  Having heard Revlon's statements about the implementation schedule and production levels, it is implausible that a reasonable investor would infer anything (much less be misled) about employee training or risk controls.[7]

Realizing they cannot plead misstatement based on the actual statements about remediation, Plaintiffs resort to mangling Ms. Perelman's statements in an August 9, 2018 earnings call that "most of the SAP disruption [is] behind us" and that Revlon had "resolved the fundamental issues."   (Opp. at 19.)   In context (which Plaintiffs omit), Ms. Perelman was speaking about production levels:  "We have resolved the fundamental issues *and our plant is back to producing at greater than pre-SAP levels*" (Ex. 7 (Aug. 9, 2018 Earnings Call) at 2 (emphasis added)), a fact that Plaintiffs do not challenge.   If Plaintiffs are reading Ms. Perelman's statements as a certification that *all* SAP implementation issues had been resolved, that argument is untenable.  As Ms. Dolan explained on the very same call: "We've made tremendous progress. We're refilling our pipeline and we're improving our customer service levels with every passing week, *but we do continue to expect to feel some impact from this*."  (*Id.* at 6 (emphasis added).)

*Third*, Plaintiffs wrongly contend that certain statements Defendants made about the future prospects of Revlon's remediation plans were misleading.[8]  But Plaintiffs do not dispute that these statements are not actionable because they are "just the sort of predictive statements of opinion and belief that courts have found immaterial."  (Br. at 17-18 (quoting *Lasker* v. *New York*

---

[7] *See In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *11 (S.D.N.Y. Mar. 30, 2018) ("[S]imply because an omitted fact would be 'interesting' to an investor does not render all other statements on that topic misleading absent disclosure.  Such a broad theory of omissions liability would paralyze corporate spokespersons and likely yield less, rather than more, information for investors." (citation omitted)).

[8] Plaintiffs object to Revlon's statements in earnings calls that Revlon (i) was "completing the final phases of improvements," and (ii) "expect[ed] continued improvement going forward."  (Opp. at 19.)

5

*State Elec. & Gas Corp.*, 1995 WL 867881, at *6 (E.D.N.Y. Aug. 22, 1995), *aff'd*, 85 F.3d 55 (2d Cir. 1996)).)  The claims about these statements should be dismissed on this ground alone.

Plaintiffs do take issue with Defendants' argument that their future predictions were accompanied by appropriate cautionary language, and so cannot constitute fraud under the Reform Act's safe harbor.  Here, Plaintiffs argue that the accompanying "cautionary language" was "boilerplate." (Opp. at 21.)  This argument fails because, as Plaintiffs' own authority establishes, "a defendant is not liable if the forward-looking statement is identified and accompanied by meaningful cautionary language *or* is immaterial *or* the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading." *Slayton*, 604 F.3d at 766.  Because Plaintiffs do not even try to argue that the statement was made with "actual knowledge that it was false or misleading," they fail to rebut the safe harbor.  In any event, non-boilerplate, meaningful cautionary language was present:  each of Revlon's earnings calls incorporated by reference the SEC filings made on the same day, which (i) identified as forward-looking statements its "beliefs and expectations regarding the Company's progress in resolving customer service level disruptions resulting from the launch of its new ERP system," and (ii) listed many related risks.[9]

*Finally*, Plaintiffs argue that the various oral statements of Revlon's executives on remediation efforts need not be read in light of the Company's related risk disclosures, including the statement in Revlon's 2017 10-K that it "cannot provide assurances that it will remedy the [SAP] systems issues in time to fully recover these sales and/or that the [SAP] implementation will not continue to disrupt the Company's operations and its ability to fulfill customer orders"

---

[9] (*See, e.g.*, Ex. 13 (2018 Q1 10-Q) at 41; Ex. 14 (2018 Q2 10-Q) at 50; Ex. 6 (2018 Q3 10-Q) at 54); *see also In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *6 (E.D.N.Y. Aug. 6, 2019) ("Cautionary statements disclosed in SEC filings may be incorporated by reference." (quotation omitted)).)  Each of Revlon's forward-looking statements, both pre- and post-launch, is subject to the safe harbor for the same reason.

(Ex. 4 (2017 10-K) at 22), and similar disclosures in Revlon's 2018 10-Qs.[10]  But an executive's oral statements "must be considered in conjunction with the substance of the company's unchallenged disclosures."  (Br. at 18 (quoting *Livingston* v. *Cablevision Sys. Corp.*, 966 F. Supp. 2d 208, 218 (E.D.N.Y. 2013).)  Plaintiffs respond that "the risk disclosure from the 2017 10-K [] is explicitly ***challenged***" (Opp. at 21 (citing Opp. § III.B.2 (emphasis in original))), but Plaintiffs' Opposition actually challenges the 2017 10-K's risk disclosure related to the SAP implementation—*not* the risks identified with the remediation efforts.  (Opp. at 18.)  Nor do Plaintiffs challenge the risk disclosures in the 10-Qs.

### C.  Plaintiffs Still Fail to Allege Facts Showing that Revlon's ICFR Certifications Were False.

Plaintiffs contend that the deficiencies contributing to a material weakness finding in the 2018 10-K existed prior to Revlon's 2018 ICFR certifications, rendering those prior certifications false.  (Opp. at 22.)  This argument fails on two levels.  *First*, Plaintiffs still have not alleged facts showing that all the necessary ingredients of the material weakness determination existed earlier, including that Revlon did not "perform an effective continuous risk assessment process that adequately identified and assessed risks affecting the Company's internal controls over financial reporting."  (Ex. 9 (2018 10-K) at 52.)  *Second*, even if Plaintiffs had adequately alleged that similar deficiencies had existed earlier, "an equally plausible inference is that Defendants believed that any deficiencies were not so acute as to rise to the level of an internal control weakness."  *Lefkowitz* v. *Synacor, Inc.*, 2019 WL 4053956, at *10 (S.D.N.Y. Aug. 28, 2019).  Plaintiffs have no response to this point.  Nor do Plaintiffs address (i) Revlon's principal authority, *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 294 (S.D.N.Y.

---

[10] (Ex. 13 (2018 Q1 10-Q) at 42 (warning of "difficulties, delays in and/or less than expected results from the Company's efforts to resolve the customer service level disruptions resulting from the launch of its new ERP system"); Ex. 14 (2018 Q2 10-Q) at 51 (same); Ex. 6 (2018 Q3 10-Q) at 54 (same).)

2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015), which rejected a theory substantially similar to Plaintiffs' theory here, or (ii) Plaintiff's burden of alleging that the SOX certifications, as statements of opinion, were not believed when made.  (*See* Br. at 19-20.)[11]

## II.  PLAINTIFFS' OPPOSITION CONFIRMS THAT THEY HAVE NOT PLEADED THE REQUIRED "STRONG INFERENCE" OF SCIENTER.

Plaintiffs tellingly relegate their entire response to Defendants' arguments about scienter to two pages of their Opposition.  The brevity of Plaintiffs' argument is likely due to their inability to resolve the irreconcilable illogic of their claims—that Defendants, without any motives, rolled out SAP knowing it would fail, and then sought to mislead investors about the process, all while making repeated disclosures about the facts that were supposedly concealed.[12]

*First*, Plaintiffs do not contest that (i) they fail to plead that any Defendant had a motive to commit to the alleged fraud, and (ii) their failure to do so requires them to produce an even "stronger inference of recklessness," *Kalnit* v. *Eichler*, 264 F.3d 131, 143 (2d Cir. 2001).

*Second*, the Opposition shows that Plaintiffs have not pleaded this stronger inference.  As an initial matter, Plaintiffs still identify no allegations connecting five of the seven Defendants, Perelman, Dolan, Kralovich, Anderson, and Figuereo (the last three of whom are not even alleged to have made a misstatement) to any specific knowledge—such as conversations, written reports, or auditor opinions—demonstrating that information supposedly contradicting their alleged misstatements was "either known to the defendant or so obvious that the defendant must have been aware of it." *Chill* v. *Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) (internal quotation marks omitted); *see* Br. at 23.  Rather, Plaintiffs suggest that these Defendants should

---

[11] Plaintiffs' only authority, *Cornwell* v. *Credit Suisse Grp.*, 689 F. Supp. 2d 629, 638 (S.D.N.Y. 2010), is inapposite. (Opp. at 22.)  That case found defendant's statement about "strong risk management programs and internal controls" was actionable in light of subsequent disclosure of a $2.8 *billion* overstatement.  *Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 384-85 (S.D.N.Y. 2009).  No such overstatement occurred here.

[12] Plaintiffs also do not argue that they have pled corporate scienter.  (*See* Br. at 25-26.)

8

be charged with knowledge of the alleged fraud simply because of their seniority within Revlon and because they had ultimate responsibility for the SAP rollout and remediation, or ICFR. (Opp. at 24-25.) In doing so, Plaintiffs do not even address, much less rebut, the case law holding that a plaintiff cannot plead scienter based on a defendant's position within a company. (*See* Br. at 25.) Nor can Plaintiffs charge these Defendants with scienter based merely on the allegation that Revlon had "weak internal controls." (Opp. at 25.) In the cases Plaintiffs cite for this proposition,[13] the defendant companies restated their financials, and the courts found that weak internal controls related to accounting procedures supported the inference that prior false financial information was disseminated to the market with scienter. That case law has no application here, where there are no allegations of a financial restatement.[14]

As to the sixth Defendant, Mr. Meister, Plaintiffs' only specific claim is that, *after* the launch, he stated that he had believed—*before* the launch—that the SAP rollout would proceed "flawlessly." (Opp. at 25.) It is unfathomable that any investor would care about Mr. Meister's *post hoc* descriptions of his prior (unexpressed) beliefs, let alone that he was trying to defraud investors through that description. Plaintiffs suggest that the statement reflects scienter because it falsely "reassured" the market (Opp. at 25), but this makes no sense because the statement says nothing about the post-launch state of the company. (Ex. 4 (2017 10-K) at 22.)

The Opposition argues scienter against the seventh Defendant, Mr. Peterson, based solely on his November 3, 2017 pre-launch statement—listing "new ERP systems" as one of various initiatives to improve the Company (Ex. 15 (Nov. 3, 2017 Earnings Call) at 4). Plaintiffs

---

[13] *See In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 246 (S.D.N.Y. 2018) (citing cases).

[14] Moreover, although Plaintiffs' cases suggest that "weak internal controls will *support* an inference of scienter," they do not hold that weak internal controls were by themselves *sufficient*. *Cannavest*, 307 F. Supp. 3d at 246-47 (emphasis added). In fact, numerous cases hold that scienter is not adequately alleged even where a company later announces a material weakness. *See, e.g.*, *Magnum*, 26 F. Supp. 3d at 294-96; *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *10 (S.D.N.Y. Sept. 9, 2019); *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 471 (S.D.N.Y. 2018).

contend that this statement was knowingly false because Mr. Peterson was allegedly (i) informed that certain implementation mock runs had failed, and operational personnel were receiving "Cs and Ds on performance," and (ii) told by a more junior executive that "the system was not ready" and by another more junior executive about "serious concerns." (AC ¶ 64; *see* Opp. at 24.) As an initial matter, Plaintiffs do not allege that Mr. Peterson was aware of this information "*at the time the purported false statements were made.*" *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 367 (S.D.N.Y. 2015). Indeed, Plaintiffs allege only vaguely that Mr. Peterson learned of certain information at some unidentified time before the February 1, 2018 SAP launch, but, critically, do not allege that Mr. Peterson knew any of this before his November 3, 2017 statement. *See In re Nokia Oyj (Nokia Corp) Sec. Litig.*, 423 F. Supp. 2d 364, 394 (S.D.N.Y. 2006) (information known in April did not make January statement "knowingly false when made").

Moreover, even if Mr. Peterson had known all of the information Plaintiffs charge to him at the time of his November 3, 2017 statement, that still would not establish scienter in light of Revlon's disclosures about the risks of the rollout. (*See* Br. 4-5, 18.) To the extent Plaintiffs argue that Mr. Peterson knew, for certain, that the SAP launch was going to fail, that too is implausible. Plaintiffs have offered no reason why Mr. Peterson would have allowed the launch to proceed if he *knew* Revlon was not ready in February 2018.[15] This is particularly so given that, according to Plaintiffs, Mr. Peterson allegedly delayed the SAP rollout twice when he thought Revlon was not ready. (AC ¶ 62.) Whether the decision to proceed with the SAP rollout was, in hindsight, ill-advised, it is not evidence of *fraud*.[16]

---

[15] *See Davidoff* v. *Farina*, 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005) ("[I]t would have made no economic sense for defendants to invest literally billions of dollars in a venture that they knew would fail").

[16] Plaintiffs do not contest that their Section 20(a) claims must be dismissed if their Section 10(b) claims are dismissed (*see* Br. at 27 n.11), nor that claims may be sustained only against the "maker" of each alleged misstatement (*see id.* at 21).

10

## CONCLUSION

For the foregoing reasons and those stated in Defendants' opening memorandum,

Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice.

Dated:     New York, New York
           February 24, 2020

Respectfully submitted,


/s/ *Sharon L. Nelles*
Sharon L. Nelles
Nicolas Bourtin
Matthew A. Schwartz
Akash M. Toprani
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for defendants Revlon, Inc., Paul Meister, Debra Perelman, Victoria Dolan, Wendel F. Kralovich, Siobhan Anderson, Juan R. Figuereo, and Christopher H. Peterson*

11